IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

OLES ENVELOPE, LLC,                    :
                                       :
                                       :
v.                                     : Civil Action No.WMN-02-2017
                                       :
                                       :
GTD COMPANY, INC., <u>et al.</u>           :

MEMORANDUM

Before the Court is a motion for summary judgment filed
by Defendants GTD Company, Inc., Harold Robinson, and David
Oechsle.  Paper No. 49.  The motion is fully briefed.

**I. FACTUAL BACKGROUND**

This action arises out of an agreement (the Asset
Purchase Agreement) whereby Defendants Harold Robinson and
David Oechsle sold the assets and goodwill of their envelope
printing company, the RO Envelope Company (RO Envelope), to
Plaintiff Oles Envelope, LLC (Oles LLC),[1] a subsidiary of
Plaintiff Oles Envelope Corporation (OEC).  It was the intent
of OEC, which is engaged in the business of manufacturing and
selling envelopes, that Oles LLC would continue to operate the
business of RO Envelope as an independent subsidiary of OEC.

The parties entered into the agreement on September 30,
1999.  The Asset Purchase Agreement provided for a purchase

---

[1] Oles LLC went by the name RO Envelope, LLC for several
years after the sale.  For simplicity and clarity, the Court
will refer to the purchasing entity as Oles LLC.

price of $2,000,000, plus the assumption of RO Envelope's
debt.  Of the purchase price, $175,000 was to be paid at
closing.  The remaining $1,825,000 was to be paid in five
annual payments, increasing from $200,000 due on October 1,
2000, to $525,000 due on October 1, 2004, all pursuant to the
terms of a Promissory Note executed by Oles LLC.  The
payments were to be made into an account set up in the name of
Defendant GTD Company, Inc. (GTD), which was established as
the successor-in-interest to RO Envelope and which is wholly
owned by Robinson and Oechsle.  Defendant OEC also executed a
Guarantee Agreement in favor of Defendants, guaranteeing the
payment of the remainder of the purchase price.

       In addition to these agreements and instruments, Robinson
and Oechsle entered into employment agreements whereby
Robinson agreed to stay on as the President of Oles LLC
through September 2001, and Oechsle agreed to serve as the
Vice President through September 2003.  Both men agreed to
devote their "full business time, attention, skill and energy"
to the performance of their duties for that company.

       Although the parties sharply disagree as to the cause, it
is undisputed that Oles LLC began to rapidly disintegrate
shortly after the transfer.  Sales decreased to such a degree
that in July of 2002, Oles LLC ceased operations altogether.

Since that time, Oles LLC has failed to make any of the payments due under the Promissory Note, and OEC has refused to make any payment under the Guarantee Agreement.

Shortly before Oles LLC went out of business, Plaintiffs filed a Complaint alleging that Robinson and Oechsle had engaged in a pattern of conduct inconsistent with their contractual and fiduciary duties, including:  diverting customers to rival companies, padding expense accounts, and generally failing to devote adequate time and attention to the business of Oles LLC.  Plaintiffs also alleged that Robinson and Oechsle were aware of, and participated in, a series of embezzlement schemes orchestrated by Oles LLC's bookkeeper, Joseph O'Brien.  Upon discovery of this conduct, Plaintiffs assert that they were forced to ask Oechsle to tender his resignation on February 23, 2001, two and one half years before he was due to step down as President, and shortly thereafter, were compelled to ask Robinson to retire three months early, on June 31, 2001.  It is Plaintiffs' theory that Robinson's and Oechsle's conduct, and the resultant early departure of these key officers, led directly to the demise of Oles LLC.  The Complaint, as amended, contains claims for Rescission (Count I); Breach of Contract (Counts II and III); and Breach of Fiduciary Duty (Count IV).

Defendants have filed a Counterclaim seeking payment of the remainder of the purchase price ($1,425,000), as well as recovery of the amount Defendants alleged Plaintiffs should have paid under the terms of Oles LLC's agreement to assume RO Envelope's debt. Upon the close of discovery, Defendants filed the instance motion for summary judgment, arguing that they are entitled to judgment as to most of Plaintiffs' claims. Acknowledging, implicitly if not explicitly, that there are some disputes of fact that cannot be resolved at this stage of the proceedings, they ask that the Court enter an order pursuant to Rule 56(d) stating that certain factual allegations contained in the Amended Complaint are completely devoid of support and should be eliminated as issues in this litigation. They also ask the Court to enter summary judgment on their counterclaims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If "the evidence [is] so one-sided that one party must prevail as a matter of law," this Court must grant summary judgment in that party's favor. Id. at 268. "Summary

4

judgment is not appropriate when there is an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the non-moving party upon which a jury can return a verdict for that party." <u>Shealy v. Winston</u>, 929 F.2d 1009, 1012 (4th Cir. 1991). <u>See also</u> <u>Podberesky v. Kirwan</u>, 38 F.3d 147, 157 ("A district court may not resolve conflicts in the evidence on summary judgment motions . . . ."), <u>reh'g, en banc</u>, <u>denied</u>, 46 F.3d 5 (4th Cir. 1994), <u>cert. denied</u>, 115 S.Ct. 2001 (1995). In ruling on a motion for summary judgment, the Court assumes that all of the non-moving party's evidence is worthy of belief, and all justifiable inferences are to be drawn in favor of the non-moving party. <u>Anderson</u>, 477 U.S. at 252.

## III. DISCUSSION

Upon review of the pleadings, the numerous exhibits, and the relevant case law, it is apparent to the Court that there are sufficient disputes of fact such that Defendants' motion for summary judgment must be, in large part, denied. There are genuine disputes of fact as to the degree of Defendants' misconduct and how that misconduct might have impacted the relative success of Oles, LLC. A reasonable jury could find that Robinson and Oechsle, particularly Oechsle, repetitively charged personal expenses to the company expense account.

5

There is evidence, largely uncontradicted, that the trucking company owned and operated by Robinson and Oechsle, RO Express, consistently overcharged or fraudulently charged Oles, LLC for shipping services.  There is evidence that Oechsle was aware that numerous checks intended for Oles LLC were diverted into a GTD account.  Thus, a jury could reasonably conclude that Robinson and Oechsle breached both their employment contracts and fiduciary duties to Oles LLC, at least to some degree.

Although it is not clear what practical impact this would have on the amount of damages recoverable by Plaintiffs, it appears that a finding that Robinson and Oechsle breached their employment contracts would also trigger an indemnity clause contained in the Asset Purchase Agreement.  Section 6.01(a) of the Asset Purchase Agreement states that Robinson and Oechsle "jointly and severally, shall indemnify, save and keep [Plaintiffs] forever harmless against and from all liability, demands, claims, actions or causes of action, assessments, losses, penalties, costs, damages or expenses . . . as a result of or arising out of or by virtue of (i) the breach of any representation, warranty or covenant made by [Robinson and Oechsle] herein or in any certificate, exhibit or schedule delivered to [Oles LLC] in connection herewith."

Because the Employment Agreements were made exhibits to the
Asset Purchase Agreement, Plaintiffs contend that a breach of
the Employment Agreements triggers § 6.01(a)'s indemnity
provision.

Defendants rely on two other provisions of the Asset
Purchase Agreement, §§ 2.26 and 4.01, to avoid that
conclusion.  Defendants contend that these provisions limit
the scope of the indemnity clause to matters represented on
and as of the date of the closing.  They note, correctly, that
the only breaches alleged in the Amended Complaint arise out
of post-closing conduct.  The language of §§ 2.26 and 4.01,
however, does not support Defendants' position.

Article 2 of the Agreement sets out the "REPRESENTATIONS
AND WARRANTIES OF THE SELLER AND GUARANTORS."  Sections 2.01
through 2.25 lists a series of those warranties, and § 2.26
provides that "[e]ach warranty, representation, and covenant
set forth <u>in this Article 2</u> shall be deemed to be made on and
as of and speak on and as of the date hereof and as of the
Closing (except as otherwise specifically provided herein)."
(emphasis added).  Thus, the limitation in § 2.26 is itself
limited to the warranties, representations and covenants
enumerated in Article 2.  The warranties and covenants in the
Employment Agreements are not among those listed in Article 2.

7

Defendants' reliance on § 4.01(k) is similarly misplaced.

Section 4.01(k) states:

> (k) <u>Representations and Warranties.</u>  All of
> the representations and warranties of
> Seller and Guarantors contained in this
> Agreement shall be true and correct in all
> material respects as of the Closing Date.

Article 4, however, is the portion of the Asset Purchase

Agreement that sets out the "CLOSING CONDITIONS," and section

4.01(k) is prefaced by the following language:

> SECTION 4.01. <u>Closing Conditions Relating
> to Purchaser.</u>  The obligation of Purchaser
> to consummate the purchase of the Purchased
> Assets will be subject to the satisfaction
> of the following conditions: . . . .

Thus, § 4.01(k) only explains one of the conditions for

closing, and is not relevant to the indemnity provision of §

6.01.

Turning briefly to the quantum of damages, Defendants

make much of the fact that most of the loss directly

attributable to their conduct has been reimbursed, and argue

that the Court should enter an order limiting any damage claim

to the relatively small amount of personal expenses and

misdirected funds that is still in dispute, and which

Defendants have yet to return.  The Court disagrees.  Based

upon the evidence before the Court, a reasonable inference

could be made that Defendants' breaches, if proven, had an

8

impact on the profitability and viability of Oles LLC beyond the losses directly attributable to those breaches.  Should the jury find that the President and Vice President of a company were engaged in even a small portion of the misconduct against the company for which there is some evidence, no great leap of logic is required to conclude that this demonstrated lack of loyalty on the part of senior personnel would have had some additional adverse impact on the company's bottom line, beyond that directly attributable to the misconduct.

A jury could also find consequential damages stemming from the early retirement of Robinson and resignation of Oechsle.  There is evidence that, in purchasing RO Envelope, Plaintiffs were clearly anticipating benefitting from Robinson's and Oechsle's expertise in running the company, their relationships with the existing customer base, and the use of their network to develop new customers.  Viewing the evidence in the light most favorable to Plaintiffs, a jury could reasonably conclude that Defendants' conduct compelled Plaintiffs to effectuate the premature departure of Robinson and Oechsle from the company.  Thus, Plaintiffs would have been deprived of a portion of the benefit of their bargain through the actions of Defendants.

That said, the Court must also note that the evidence

does not support anything close to the amount of damages
sought by Plaintiffs.  As Defendants appropriately note, there
were many other factors that aided in the demise of Oles LLC,
including: a weak national economy, the September 11th attacks,
and the anthrax scares that took place shortly thereafter.
Oles LLC also lost other key personnel during this period,
most notably its premier salesperson, and there is no evidence
tying these departures to Defendants.  Furthermore, poor
decisions on the part of Plaintiffs may have also led to the
demise.  For example, after the departure of Robinson and
Oeschsle, Plaintiffs placed the management of the company into
the hands of an individual with no experience in the envelope
printing business.   A jury would need to consider all these
factors in determining the amount of damages that can be
fairly attributed to Defendants' actions.

    Defendants also argue that the Court should enter an
order pursuant to Rule 56(d) removing certain factual
allegations from this litigation.  In their Amended Complaint,
Plaintiffs listed ten categories of alleged wrongdoing that
formed the underpinnings for their claims.  The pleadings and
exhibits demonstrate that there is no support for at least six
of those ten categories.  For example, the Amended Complaint
alleges that Defendants diverted customers to a competitor,

but the record is devoid of any factual support for that
claim.

Where a district court finds that the moving party is not
entitled to summary judgment on the entire case, Rule 56(d)
allows for the court to enter an order "specifying the facts
that appear without substantial controversy."  Those facts are
then "deemed established" and the trial of the matter is
"conducted accordingly."  While the Court agrees that there is
no evidence in the record supporting these six factual
allegations, the Court is not convinced that the entry of a
Rule 56(d) order specifying the non-existence of these facts
is the most appropriate response.  See Charles Alan Wright, et
al., Federal Practice and Procedure § 2737 at 319 (opining
that court can decline to enter a Rule 56(d) order where it
determines that such an order would not materially expedite
the adjudication).  It appears that this issue can be better
addressed by other means, perhaps by the inclusion of
appropriate language in the pretrial order.

For these reasons, the Court will deny Defendants's
motion as to Counts II, III, and IV, and as to their request
for an order under Rule 56(d).

The Court concludes that Defendants are entitled,
however, to summary judgment on Plaintiffs' claim for

rescission.  This is simply not a situation, for a number of reasons, where rescission is appropriate.

Under Pennsylvania law,[2] rescission is an equitable remedy reserved for "extraordinary circumstances when the complaining party has suffered a breach of such a fundamental and material nature that it affects the very essence of the contract and serves to defeat the object of the parties." Castle v. Cohen, 676 F.Supp. 620, 627 (E.D. Pa. 1987).  Rescission constitutes

> "the unmaking of a contract, and is not merely a termination of the rights and obligations of the parties towards each other, but is an abrogation of all rights and responsibilities of the parties towards each other from the inception of the contract.  The purpose of an equitable rescission is to return the parties as nearly as possible to their original positions with regard to the subject matter of the contract.  One who wishes to rescind a contract must restore or tender a return of the property or security which was the subject matter of the contract."

Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc., 94 F.Supp.2d 589, 595-596 (E.D. Pa. 1999) (quoting Keenheel v. Securities Comm'n, 579 A.2d 1358, 1361 (Pa. Cmwlth. 1990)).  "[R]escission comes into play only when a party is attacking the validity of the agreement, that is, challenging whether there was ever a meeting of the minds." Coram, 94 F.Supp.2d

---

[2] There is no dispute that the agreement, and thus this litigation, is governed by Pennsylvania law.

at 596.

Notably, there are no allegations in the Complaint
involving any fraudulent or misleading representations made in
the negotiations leading up to the sale of RO Envelope.  Thus,
there was no misunderstanding as to the nature of the
agreement, nor can there be any argument that there was a
failure to have a meeting of the minds.  While Defendants'
post-closing conduct may have diminished, somewhat, the value
of company purchased, Oles LLC was, nevertheless, an ongoing
envelope printing business that Plaintiffs operated for almost
three years after the sale.  As indicated above, the Court
concludes that the evidence is woefully inadequate to support
the conclusion that all of the losses experienced by the
company were the result of Defendants' conduct, or that
Defendants' breaches were of a sufficient magnitude to
completely nullify the value of the company.

Assuming that rescission was ever an appropriate remedy,
the Court also concludes that Plaintiffs have waived that
remedy by waiting too long before seeking it.  Acknowledging
that for there to be rescission, the parties must be restored
to the status quo ante, Plaintiffs aver that they "attempted
to restore Defendants to their original position in May, 2002
by offering Defendants the opportunity to rescind the

13

transaction." Opp. at 43.  On May 3, 2002, Plaintiffs'

counsel sent a letter to Oechsle and Robinson in which

Plaintiffs offered to tender the company back to Defendants

and demanded the return of all payments made under the Asset

Purchase Agreement.  See Pls.' Exh. 17.  This offer was made

only after this action was filed, however, and at a time when

Oles LLC was in a hopeless financial position, just a few

months shy of shutting down completely.

Under Pennsylvania law, rescission must be sought in a

timely manner.

> When a party discovers facts which warrant
> rescission of his contract, it is his duty
> to act promptly, and, in case he elects to
> rescind, to notify the other party without
> delay, or within a reasonable time.  If
> possible, the rescission should be made
> while the parties can still be restored to
> their original positions.  Failure to
> rescind within a reasonable time is
> evidence, and may be conclusive evidence,
> of an election to affirm the contract.

Fichera v. Gording, 227 A.2d 642, 643-644 (Pa. 1967).

Plaintiffs argue in their pleadings that, as of February

2001, the uncovered malfeasance led to such serious doubts

about Robinson's and Oechsle's integrity that they "had no

choice but to replace them."  Opp. at 37; see also, Opp. at 25

("Defendants' thievery placed Oles' management on the horns of

a dilemma: they could either proceed with untrustworthy

management along with the unknown and unpredictable

liabilities or replace Robinson and Oechsle.  They chose the

latter, which was the responsible choice."). If rescission was ever a potential remedy, it was at that point that Plaintiffs should have sought it. Instead, they waited more than a year, until any remaining value in the company was effectively diminished. See Muehlhof v. Boltz, 64 A. 427, 429 (Pa. 1906)(holding rescission "out of the question" where plaintiffs waited seven months while continued to operate purchased enterprise after learning of alleged fraud and breach of contract).

Thus, the Court finds that Defendants are entitled to summary judgment as to Count I of the Amended Complaint.

Aside from the argument that the Asset Purchase Agreement should be rescinded, Plaintiffs make no other challenge to the validity of that agreement, or to the related agreements. Thus, Defendants are entitled to payment under the Asset Purchase Agreement, the Guarantee Agreement, and the agreement for the assumption of RO Envelope's liabilities. Both the Asset Purchase Agreement and the Promissory Note, however, allow for the withholding of payments to the extent necessary to provide for indemnification. Asset Purchase Agreement at 6.01(f); Promissory Note at 2. Defendants' entitlement to judgment is also subject to a setoff should Plaintiffs prevail in establishing liability and damages. Accordingly, while Defendants are entitled to some payment under these agreements, entry of summary judgment on the Counterclaims

15

would be premature.

     A separate order will issue.

                                    _____/s/_____

                                    William M. Nickerson
                                  Senior United States District Judge

Dated: February 10, 2004