```
 1                    VOLUME I
        IN THE UNITED STATES DISTRICT COURT
 2           FOR THE DISTRICT OF MARYLAND


 3   OLES ENVELOPE, LLC, et al.,
              Plaintiffs
 4   v.
     GTD COMPANY, INC., et al.
 5            Defendants


 6   vs.                        CIVIL ACTION NO:
                                   WMN 02-2017
 7   GTD COMPANY, INC., et al.
     Defendants
 8   * * * * * * * * * * * * * * * * * *
     GTD COMPANY, INC.,
 9   HAROLD ROBINSON, and
     DAVID OECHSLE
10            Counter Plaintiffs
     v.
11   OLES ENVELOPE, LLC,
     and
12   OLES ENVELOPE CORPORATION,
     Counterclaim Defendants
13   _____/

14          The deposition of DAVID D. OECHSLE was held

15   on Wednesday, May 7, 2003, commencing at 9:40 a.m., at

16   the Law Offices of Whiteford, Taylor & Preston, Seven

17   Saint Paul Street, Suite 1400, Baltimore, Maryland,

18   21202, before R. Dwayne Harrison, Notary Public.

19

20                                    EXHIBIT
                                         I
21   REPORTED BY:   R. Dwayne Harrison
```

EXHIBIT I

Page 14

1  it could have.
2  Q  Did you consider Mr. Robinson the boss?
3  A  No.
4  Q  Did you consider you and he to jointly be
5  the bosses of the company?
6  A  Yes.
7  Q  Let me show you what was marked as
8  Exhibit 2 to Mr. Robinson's deposition. My question
9  is: Is this a document that you saw during the
10  negotiations for the sale of RO Envelope Company? Take
11  whatever time you need to look at it.
12  A  The first time I saw this document was in
13  preparation for this meeting.
14  Q  So you deny ever seeing it during the
15  course of negotiations for the sale of RO Envelope
16  Company?
17  A  I don't recall ever seeing it.
18  Q  So it's possible you may have seen it, you
19  just don't recall; is that correct?
20  A  I don't recall.
21  Q  During the course of negotiations, did you

Page 15

1  discuss with Oles representatives that in order for the
2  acquisition to be economical for Oles, sales would have
3  to increase at RO Envelope Company?
4  A  I don't recall that ever being a
5  discussion. We gave Oles -- let me backtrack. They
6  came to us to buy the company. We didn't have this
7  company up for sale. We told them what the price was,
8  which was two million dollars, and that's always what
9  the price was. There may have been discussions on what
10  we could do with sales but not anything really specific
11  that I recall.
12  Q  Do you recall Oles people providing you
13  with any projections into the future regarding sales
14  from RO, LLC?
15  A  When?
16  Q  At any time prior to the acquisition.
17  A  I really don't recall that, no.
18  Q  Do you agree that as of October 1st, 1999,
19  you had a fiduciary duty to act in good faith and in
20  the best interest of the LLC as its vice-president?
21  MR. WRIGHT: Objection. You can answer.

Page 16

1  A  I'm not quite what fiduciary duty means.
2  It's a big legal word. But I agree that I had -- I
3  should do my job to the best of my ability.
4  Q  Do you agree that you and Mr. Robinson were
5  in a position of trust to run the LLC for the benefit
6  of its owners?
7  MR. WRIGHT: Objection. You can answer.
8  A  Could you repeat that, please?
9  Q  Do you agree that you and Mr. Robinson were
10  in a position of trust to run LLC for the benefit of
11  its owners?
12  MR. WRIGHT: I renew my objection. You can
13  answer.
14  A  I agree that we were supposed to do our job
15  as to the best of our ability.
16  Q  Well, that doesn't really answer my
17  question. Don't you agree that you were entrusted by
18  the owners of LLC to run the business?
19  MR. WRIGHT: Objection. You can answer.
20  A  I would suppose.
21  Q  Do you agree that LLC bought the accounts

Page 17

1  receivable of RO Envelope Company, don't you?
2  A  LLC bought the assets of the company.
3  Q  All of the assets?
4  A  I think they bought all the assets.
5  Q  That would include the accounts receivable,
6  correct?
7  A  That would be correct.
8  Q  That would include the cash in the bank
9  accounts, correct?
10  A  Yes, that would be correct.
11  Q  I want to show you some more documents that
12  were marked at Mr. Robinson's deposition. This is
13  Deposition Exhibit Number 6 from Mr. Robinson's
14  deposition.
15  A  Okay.
16  Q  Is this the signature card for the RO
17  Envelope Company operating account?
18  MR. WRIGHT: Meaning the first page of
19  Exhibit 6?
20  MR. COE: Yes.
21  A  It appears to be.

Gore Brothers Reporting & Video Co., Inc.            Towson Reporting Company
410-837-3027                                          410-828-4148